[S. F. No. 14508. In Bank.—February 11, 1932.]

FRANCES S. EVANS, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Henry E. Monroe, Julia M. Easley and Henriette W. Steinegger for Petitioner.

Charles H. Brock, Charles I. Baker and Arch. H. Vernon for Respondents.

Perry Evans, Thos. C. Ridgway, J. N. Owen and Bordwell, Mathews & Wadsworth, as *Amici Curiae*.

WASTE, C. J.—The object of this proceeding in *certiorari* is to test the validity of the action of the state legislature in establishing a Probate Code (Stats. 1931, chap. 281, p. 587). The respondents demurred and answered to the petition, and the matter comes here on questions of law alone.

The Superior Court in and for the County of Los Angeles, sitting in probate, appointed a special administrator of an estate without an order first having been made for the giving of notice of said proceedings, and without a notice of any kind having been given, as required by the provisions of section 1412 of the Code of Civil Procedure. That section, if it has not been repealed, has been held by this court to require that notice of some kind must be given (*Olcese v. Superior Court*, 210 Cal. 566 [292 Pac. 964]); but section 461 of the new enactment known as the Probate Code provides that the appointment of a special administrator "may be made at any time without notice or upon such notice as the court or judge may deem reasonable". The facts showing the necessity for the appointment of a special administrator in this case are not disputed. It follows, therefore, that, if the Probate Code is a valid existing statute, the jurisdiction of the court below to entertain an application for the appointment of, and to appoint, a special administrator cannot be challenged.

Petitioner contends that the Probate Code violates section 24 of article IV of the state Constitution in two particulars: (1) That the act embraces more than one subject; and, (2) that it is a revision of the Civil Code, the Code of Civil Procedure, and of two specific acts referred to in section 1700, to wit: "An act concerning the guardianship of incompetent veterans and of minor children of disabled or deceased veterans, and the commitment of veterans and to make uniform the law with reference thereto", approved June 3, 1929, and "An act to provide for the appointment of guardians of children maintained in any orphans' home or orphan asylum in this state", approved March 23, 1893, without the re-enactment and publishing at length of the acts revised. Section 24 of article IV of the Constitution, so far as material here, reads as follows: "Every act shall embrace but one subject, which subject shall be expressed in its title. But if any subject shall be embraced in an act

which shall not be expressed in its title, such act shall be void only as to so much thereof as shall not be expressed in its title. No law shall be revised or amended by reference to its title; but in such case the act revised or section amended shall be re-enacted and published at length as revised or amended.''

The title of the act (Stats. 1931, p. 587) is as follows: ''An act to revise and consolidate the law relating to probate, including the custody, disposal by will, succession, administration and distribution of estates of decedents, the custody and administration of estates of persons under guardianship, and the custody of persons under guardianship; to repeal certain provisions of law therein revised and consolidated and therein specified; and to establish a Probate Code.'' The act itself consists of approximately seventeen hundred sections. By section 1 it is provided that the ''act shall be known as the Probate Code and is composed of four divisions''. Section 2 provides that ''The provisions of this code, so far as they are substantially the same as existing statutes, must be construed as continuations thereof, and not as new enactments.'' Section 3 provides that no action or proceeding commenced before the code takes effect, and no right accrued, is affected by its provisions; but the proceedings therein must conform to the requirements of the new code so far as applicable. The remaining sections are arranged in four divisions designated: ''Division I. Wills. II. Succession. III. Administration of Estates of Decedents. IV. Guardian and Ward.'' The divisions, in turn, are appropriately divided into chapters and articles according to the subjects treated. Section 1700, the last in the code, is as follows: ''Sections 236 to 257, inclusive, and 1270 to 1409, inclusive, of the Civil Code and section 1205 and sections 1294 to 1722, inclusive, and sections 1724 to 1810c, inclusive, of the Code of Civil Procedure and 'An act concerning the guardianship of incompetent veterans and of minor children of disabled or deceased veterans, and the commitment of veterans and to make uniform the law with reference thereto,' approved June 3, 1929, and 'An act to provide. for the appointment of guardians of children maintained in any orphans' home or orphan asylum in this state,' approved March 23, 1893, are hereby repealed.''

This case at once brings to mind the decision in *Lewis v. Dunne*, 134 Cal. 291 [86 Am. St. Rep. 257, 55 L. R. A. 833, 66 Pac. 478, 479], in which this court held unconstitutional the act of March 8, 1901, entitled "An act to revise the Code of Civil Procedure of the State of California, by amending certain sections, repealing others, and by adding certain new sections." We are not inclined to adopt or to follow the rather narrow interpretation applied by the court in that case, other than to agree with that portion of its opinion which says, concerning the provision of the Constitution relating to the title of an act, "whatever considerations led up to its adoption, it is clear that its direct and important purpose was that the title [of an act] should, on its face, give at least some sort of information as to what the proposed act was about." ▮ The main object of the provision being to prevent legislators and the public from being entrapped by misleading titles to bills, whereby legislation relating to one subject might be obtained under the title of another, we are of the view that the provision is not to receive a narrow or technical construction in all cases, but is to be construed liberally to uphold proper legislation, all parts of which are reasonably germane. (*Heron v. Riley*, 209 Cal. 507, 510 [289 Pac. 160].) The provision was not enacted to provide means for the overthrow of legitimate legislation. (*McClure* v. *Riley*, 198 Cal. 23, 26 [243 Pac. 429].) Mr. Chief Justice Beatty did not entirely agree with his associates in the decision in *Lewis* v. *Dunne*, *supra*. While in accord with the opinion that the Code of Civil Procedure should have been republished as a whole, he said, in his concurring opinion (p. 299), he was satisfied that the act did not embrace more than one subject, and that subject was clearly expressed in its title. But, because the title of the "act to revise the Code of Civil Procedure, etc.", *supra*, was held to be insufficient, it will be helpful, perhaps, in this discussion, to keep it well in mind and to constantly compare it with the much more comprehensive and all-inclusive provisions of the title to the act creating the Probate Code.

▮ Numerous provisions, having one general object, if fairly indicated in the title, may be united in one act. Provisions governing projects so related and interdependent as to constitute a single scheme may be properly included

within a single act. (*Barber* v. *Galloway*, 195 Cal. 1, 3 [231 Pac. 34].) The legislature may insert in a single act all legislation germane to the general subject as expressed in its title and within the field of legislation suggested thereby. (*Treat* v. *Los Angeles Gas Corp.*, 82 Cal. App. 610 [256 Pac. 447].) ■ Provisions which are logically germane to the title of the act and are included within its scope may be united. · The general purpose of a statute being declared, the details provided for its accomplishment will be regarded as necessary incidents. (*Estate of Wellings*, 192 Cal. 506, 519 [221 Pac. 628]; *Buelke* v. *Levenstadt*, 190 Cal. 684, 687 [214 Pac. 42]; and cases cited.) The language of this court in *Robinson* v. *Kerrigan*, 151 Cal. 40, 51 [121 Am. St. Rep. 90, 12 Ann. Cas. 829, 90 Pac. 129], is especially applicable to this case at this point. A provision which conduces to the act, or which is auxiliary to and promotive of its main purpose, or has a necessary and natural connection with such purpose is germane within the rule. (23 Cal. Jur. 649.)

■ In the light of these rules for determining the constitutionality of statutes, we are of the opinion that the act "to establish a Probate Code" does not embrace more than one subject, and that that one subject is expressed in its title, as required by the Constitution.

■ In determining whether the subject of an act is sufficiently referred to in its title, the court is permitted to look to the history of the particular legislation to which the act relates, when read as a whole. (*McClure* v. *Riley, supra.*) The California code commission created by the legislature (Stats. 1929, chap. 750, p. 1427) to "enter upon a revision of all the laws of the state", as a part of its report to the legislature of 1931 submitted a revision of the laws "relating to wills, succession, estates of decedents, and guardian and ward", to be known as the Probate Code. In its report (Report California Code Commission for the Year 1930, p. 8), the commission says: "For the compilation and revision of the laws a classification is necessary. . . . The Commission submits herewith . . . for adoption by the legislature, a proposed Probate Code, which will serve as an example of what can be done in grouping together cognate provisions now scattered in the Codes and General Laws. It contains a schedule of laws to be repealed as a result

of its adoption. . . . A preliminary draft was submitted to judges, lawyers and others interested. In the light of criticism received the draft was modified, submitted to and approved by the Code Commission." That classification of the laws included in the Probate Code impresses us as being reasonable and supported by the decisions of the courts of California and by the well-established and universal practice and understanding of the bench and bar of the state. Each and every one of the subjects referred to by the code commission in the classification carried into the title of the act hereinbefore quoted is germane to, and has either a necessary or a natural connection with, probate law and procedure as it has been developed and has become a part of the probate jurisprudence of the state.

The Constitution of 1849, article VI, and as amended in 1862, provided for a probate court and probate judges. At its first session in 1850, the legislature conferred jurisdiction on the probate courts in the matter of the appointment of guardians of minors, incompetents and insane persons, and in the management and disposition of their estates. (Stats. 1850, chap. 115, p. 268.) The Probate Act of 1851 related to the settlement of estates of persons, and in 1872 these provisions were carried into the Code of Civil Procedure, under the heading "Proceedings in Probate Courts". In 1872, also, some of the provisions of the early statute concerning guardians and wards were carried into the Civil Code, and others into the Code of Civil Procedure. The courts of the state have always considered guardianship matters as "probate matters". In *Ex parte Miller*, 109 Cal. 643 [42 Pac. 428], this court said (p. 646) : "The Constitution (art. VI, sec. 5) has conferred upon the superior court jurisdiction in all matters in probate, and that court is thus given control over the person and estates of minors . . . and the power to appoint their guardians." One interested in studying California's present probate system and jurisprudence and procedure, and its development from the time the Mexican system was in force before occupation by the United States, will find abundant material in the citations and references found in the "Introductory" to the article on "Executors and Administrators", in volume 5 of California Jurisprudence, page 205 et seq.

The repeal of other statutes dealing with the same subject is germane to the purpose of any act. (*Matter of Maginnis,* 162 Cal. 200, 205 [121 Pac. 723].) Our conclusion, therefore, is that the newly enacted Probate Code does not embrace more than one subject. Its numerous provisions have one general object. The classification of these provisions, made by the code commission, and carried into the title of the act, is a "reasonably intelligent reference to the subject to which the legislation of the act is to be addressed", which is all that is requisite. (*Estate of McPhee,* 154 Cal. 385, 389 [97 Pac. 878]; *Estate of Phillips,* 203 Cal. 106 [263 Pac. 1017].) If there are any provisions in the Probate Code not covered by its title, their invalidity will not affect the validity of the act as a whole. (*Matter of Maginnis, supra.*)

It was not necessary to publish at length any acts or sections of the law on the ground that they were revised or amended. If we are to assume that the Probate Code is a revised act, it must be construed as a new and original piece of legislation. Its terms are not revisory or amendatory of any former act. Consequently, the provision of the Constitution requiring that revised or amended laws shall be "published at length as revised or amended" does not apply, even though the provisions of the Probate Code may be inconsistent with existing statutes. That this conclusion is sound is borne out by the fact that the Probate Code does not expressly attempt either to revise or to amend any act by reference to its title. By the provisions of section 1700 of the act, certain designated sections of the Civil Code and of the Code of Civil Procedure and two certain acts concerning guardians are expressly repealed. While the act does not expressly refer to other acts and repeal them in terms, it does repeal them by necessary implication. (*Pennie* v. *Reis,* 80 Cal. 266, 269 [22 Pac. 176, 177], which seems to be a leading case on this point.) In that case, the court said: "The latter [repeal by necessary implication] takes place whenever by subsequent legislation it becomes apparent that the legislature did not intend the former act to remain in force [citing *Christy* v. *Sacramento County,* 39 Cal. 3]. . . . The provision of section 24 of article 4 of the state Constitution, about revising or amending a law by reference to its title, applies clearly to acts

which are in terms revisory or amendatory of some former act; it does not apply to an independent act.'' In this connection, also see *Beach* v. *von Detten,* 139 Cal. 462' [73 Pac. 187]; *People* v. *Oates,* 142 Cal. 12 [75 Pac. 337]; *Matter of Coburn,* 165 Cal. 202 [131 Pac. 352]. Following the decision in *Pennie* v. *Reis, supra,* the court decided that the section (sec. 24, art. IV) ''does not apply to amendments by implication''. (*Hellman* v. *Shoulters,* 114 Cal. 136, 153 [44 Pac. 915, 45 Pac. 1057].)

We find the Probate Code established by the act of the legislature (Stats. 1931, chap. 281, p. 587) to be free from the constitutional objections urged by the petitioner. ▆▆▆ It follows that the respondent court and the judge thereof had jurisdiction to entertain the application for the appointment of, and to appoint, the special administrator in this proceeding without a notice of any kind having been given as required by the provisions of section 1412 of the Code of Civil Procedure, which section has been superseded by section 461 of the Probate Code. Its order, therefore, is affirmed.

Preston, J., Curtis, J., Langdon, J., Seawell, J., and Shenk, J., concurred.