OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

|  |  |
|---|---|
| OPINION | : |
| | :     No. 88-902 |
| of | : |
| | :     March 30, 1989 |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| ANTHONY S. DaVIGO | : |
| Deputy Attorney General | : |
| | : |

---

THE HONORABLE DAVID R. FRANK, COUNTY COUNSEL, COUNTY OF SHASTA, has requested an opinion on the following question:

May a county transfer to a school district general fund an amount of revenue generated from ad valorem taxes levied to cover the principal and interest on bonds issued prior to July 1, 1978, which was erroneously levied and collected in excess of the bond redemption amount?

CONCLUSION

A county may, on the order of the auditor, transfer to a school district general fund an amount of revenue generated from ad valorem taxes levied to cover the principal and interest on bonds issued prior to July 1, 1978, which was erroneously levied and collected in excess of the bond redemption amount and which is in excess of an amount sufficient to pay all unpaid bonds and coupons payable from the interest and sinking fund of the district.

ANALYSIS

The Fall River Joint Unified School District is a tri-county district situated in Shasta, Lassen, and Modoc counties. In June 1967, the issuance of $28,000,000 in general obligation bonds for school construction and building maintenance, and the assessment of an ad valorem tax to pay the bonds were approved by the electorate. In 1986-87 the tax rate estimated to generate the revenue required to redeem the bonds was based only on the assessed valuation of parcels in one county, but charged as the common rate against the parcels in all three counties. As a consequence of this error, all of the parcels in the district were assessed at a rate higher than necessary to retire the indebtedness. This resulted in the premature satisfaction of the obligation, principal and interest, with an excess remainder of approximately $55,000. The question presented for consideration is whether, as an alternative to its return to the taxpayers by way of a corresponding rate reduction in

1.                                                                                                         88-902

the succeeding fiscal year,[1] the excess may be transferred to the school district general fund.[2]  It is, of course, axiomatic that a public officer has only such powers as have been conferred by law, expressly or by implication.  (65 Ops.Cal.Atty.Gen. 321, 325 (1982)--county recorder; 68 Ops.Cal.Atty.Gen. 223, 224 (1985) and 62 Ops.Cal.Atty.Gen. 504, 508 (1979)--county tax collector.)

The county board of supervisors is required to levy a tax each year upon the property within any district over which the county superintendent of schools has jurisdiction,[3] for the interest and redemption of all of the district's outstanding bonds.  (§ 15250.)[4]  The tax must be sufficient to pay accrued interest and to provide a sinking fund for the payment of the principal on or before maturity, and may include an allowance for an annual reserve to avoid fluctuating tax levies.  (*Ibid.*)

With respect to multi-county districts, sections 15260 and 15261, respectively, provide as follows:

"[§ 15260] In case of a district lying in two or more counties, the assessor of each of the counties in which the district lies, shall annually as soon as the county assessments have been equalized by the State Board of Equalization, certify to the board of supervisors of each of the counties in which any portion of the district is situated, the assessed value of all taxable property in the county situated in the school district or community college district.  The tax shall be levied according to the ratio which the assessed value of the property in the district in any county bears to the total assessed value of the property in the district.  Each board of supervisors shall levy upon the property of the district and within its own county such rate of tax as will be sufficient to raise not less than the amount needed to pay the interest and such portion of the principal of the bonds as is to become due during the year."

"[§ 15261] The tax shall be entered upon the assessment roll and collected in the same manner as other school taxes.

"The tax when collected shall be paid into the county treasury of the county. The treasurer of any county, other than the one whose superintendent of schools has jurisdiction over the school, shall, upon order of the county auditor, pay the sum collected on account of the tax into the treasury of the county whose superintendent of schools has jurisdiction over the school."

Section 15251 provides with respect to districts generally that taxes shall be paid into the county treasury of the county whose superintendent has jurisdiction over the district for which the tax was levied, to the credit of the interest and sinking fund of the district, and <u>for the sole purpose of payment of the principal and interest of bonds</u>.

---

[1]We are neither asked nor do we examine the authority or propriety of a refund by way of a future rate reduction. Taxes may, of course, be refunded only according to law.  (14 Ops.Cal.Atty.Gen. 45 (1949).)

[2]We are not concerned for purposes of this analysis with the validity or disposition of any claim for refund pursuant to Revenue and Taxation Code section 5096 et seq., and it will be assumed that no such claim has been made.  (See also Gov. Code, § 26906.)

[3]The county superintendent of schools must superintend the schools of his county.  (Ed. Code, § 1240.)

[4]Undesignated section references are to the Education Code.

With respect, however, to funds which are in excess of the amount required to satisfy the sole purpose for which they were collected and deposited, two sections are particularly significant. Section 15234 provides:

"Any money remaining in the interest and sinking fund of any district after the payment of all bonds and coupons payable from the fund, or any money in excess of an amount sufficient to pay all unpaid bonds and coupons payable from the fund, shall be transferred to the general fund of the district upon the order of the auditor."[5]

Section 15235 provides:

"Any money paid into the county treasury of the county and credited to the interest and sinking fund of any district pursuant to subdivision (b) of Section 2106 or subdivision (b) of Section 2109 remaining after the payment of all bonds and coupons payable from the fund, or which is in excess of an amount sufficient to pay all unpaid bonds and coupons payable from the fund, shall be transferred to the special reserve fund of the school district, or designated building fund of the community college district upon the order of the auditor, and may be used only for the purpose specified in Section 42840 or in accordance with the California Community Colleges Budget and Accounting Manual and for no other purpose."

These sections contain in common two limitations upon the transfer of excess monies from the interest and sinking fund of a district. First, the transfer is limited to the amount in excess of that required to pay <u>all</u> bonds and coupons payable from the fund, as distinguished from an amount attributable to an assessment error in connection with a particular bond. Second, the transfer may be made "upon the order of the auditor."

The sections contain further specifications which are inconsistent in their terms. Notably, section 15234 provides that the excess "shall be transferred to the <u>general fund</u>." Section 15235 provides that the excess "shall be transferred to the <u>special reserve fund</u>."[6] Should the excess amount be transferred to the general fund, the special reserve fund, or to either depending upon the order of the auditor?

Section 15234 was enacted substantially in its present form by the Statutes of 1931, chapter 297, section 2, and has not since been amended in material respect. Section 15235 was added in 1957 (Stats. 1957, ch. 1664, § 5) and last amended in 1981 (Stats. 1981, ch. 930, § 4). It is assumed that in enacting a statute the Legislature was aware of existing, related laws and intended to maintain a consistent body of statutes. (*Hays* v. *Wood* (1979) 25 Cal.3d 772, 784.) In the absence, therefore, of express contrary terms, it will be presumed that the Legislature did not intend by a later act to repeal a former one if by a fair and reasonable construction effect can be given to both. (*Hammond* v. *McDonald* (1939) 32 Cal.App.2d 187; 65 Ops.Cal.Atty.Gen. 512, 513, n. 3 (1982).) In *Hays* v. *Wood*, *supra*, the court summarized:

"Thus there is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there is no possibility of concurrent

_____

[5]Section 15253 provides that where bonds are declared invalid or are not issued for any reason, the tax levied and collected shall, if the district has no bonds outstanding, be transferred to the general fund of the district on the order of the auditor.

[6]A special reserve fund may be established (§ 42841), and discontinued (§ 42843).

operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together."

It may be argued that by a fair and reasonable construction effect may be given to both sections by predicating the appropriate receiving fund upon the order of the auditor. Such an interpretation would ascribe to the auditor an unconstrained discretion to determine how or for what purposes district funds would be expended. However, we find no basis for inferring a Legislative intent to confer upon the auditor additional powers not otherwise provided expressly or by necessary implication. In our view, the duty of the auditor under sections 15234 and 15235 derives from the nature of his office (see Gov. Code, § 26900 et seq.), and is ministerial. (Cf. *Thomas* v. *Dept. of Motor Veh.* (1970) 3 Cal.3d 335, 338 (Department of Motor Vehicles); *Schmitz* v. *Younger* (1978) 21 Cal.3d 90, 92-93 (Attorney General); 65 Ops.Cal.Atty.Gen. 321, 324 (1982) (County Recorder); 62 Ops.Cal.Atty.Gen. 365, 368 (1979) (Secretary of State).)

In any event, there is extrinsic and intrinsic evidence that the Legislature did not intend to supersede section 15234's express authority to transfer excess funds to the general fund. Of primary significance is the fact that the unequivocal terms of section 15234 were not expressly repealed either in conjunction with the enactment in 1957 of section 15235 or during the more than three decades which followed. Indeed, upon the reorganization of the Education Code in 1959, both sections were reenacted in sequential order. (Stats. 1959, ch. 2, §§ 22055, 22056.) Again, section 15234 was left intact when section 15235 was last amended in 1981. (Stats. 1981, ch. 930, § 4.)

Finally, section 15235 may be fairly and reasonably construed by its terms to apply exclusively to monies received "pursuant to subdivision (b) of section 2106 or subdivision (b) of section 2109 . . ." pertaining to the Community College Tuition Fund. While those and related sections have been repealed (in the same year in which section 15235 was last amended; Stats. 1981, ch. 470, § 7), they nevertheless remain incorporated by reference as the principal focus and limitation of section 15235. Nor do we deem the apparent, incidental references in section 15235 to school districts (e.g., ". . . special reserve fund of the school district, or designated building fund of the community college district"; ". . . the purpose specified in section 42840 [pertaining to school districts] or in accordance with the California Community Colleges Budget and Accounting Manual"), as "undebatable evidence" of an intent to supersede section 15234.

Based on the foregoing statutory analysis, a county may, on the order of the auditor, transfer to a school district general fund an amount of revenue generated from ad valorem taxes levied to cover the principal and interest on bonds issued prior to July 1, 1978, which was erroneously levied and collected in excess of the bond redemption amount and which is in excess of an amount sufficient to pay all unpaid bonds and coupons payable from the interest and sinking fund of the district.

It has been suggested, however, that the transfer of excess funds to the school district account would violate California Constitution, article XIII A. Section 1 of that article provides:

"(a) The maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property. The one percent (1%) tax to be collected by the counties and apportioned according to law to the districts within the counties.

"(b) The limitation provided for in subdivision (a) shall not apply to ad valorem taxes or special assessments to pay the interest and redemption charges on (1) any indebtedness approved by the voters prior to July 1, 1978, or (2) any bonded

indebtedness for the acquisition or improvement of real property approved on or after July 1, 1978, by two-thirds of the votes cast by the voters voting on the proposition."

The inquiry expressly assumes that the bonds in question were issued prior to July 1, 1978. The statutes referred to above, including those pertaining to multi-county districts, apply only to bonds which were approved by the electors prior to July 1, 1978, and to bonded indebtedness for the acquisition or improvement of real property approved by two-thirds of the voters on or after June 4, 1986.[7] (§§ 15254 & 15262.)

By virtue of subdivision (b) of section 1, article XIII A, the one percent limitation contained in subdivision (a) does not apply to ad valorem taxes to pay the interest and redemption charges on an indebtedness approved by the voters prior to July 1, 1978. (Cf. *Carmon* v. *Alvord* (1982) 31 Cal.3d 318; 66 Ops.Cal.Atty.Gen. 321, 323 (1983).) Was the amount collected in error "approved by the voters"?

It may be argued that while the tax in question was excessive, it was nevertheless levied "to pay the interest and redemption charges" on an approved indebtedness within the meaning of the exemption provided in subdivision (b). However, the words of exemption do not, in our view, extend to calculation errors, regardless of the underlying purpose for the levy. We are not aware of any principle which would impute to the electorate its approval of subsequent assessment errors by public officers, or at what magnitude of error the principle would cease to operate.

In any event, we are not asked whether section 15234 is constitutional, but whether a public agency or officer may implement it. In this regard, section 3.5 of article III of the California Constitution provides:

"*An administrative agency*, including an administrative agency created by the Constitution or an initiative statute, *has no power*:

"(a) *To* declare a statute unenforceable, or *refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional*;

"(b) To declare a statute unconstitutional;

"(c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations." (Emphasis added.)

Section 15234 has not been held unconstitutional by an appellate court. Consequently, an administrative agency may not refuse to enforce it.[8] (64 Ops.Cal.Atty.Gen. 690, 693-695 (1981)-- county board of equalization required to establish assessed values as recommended by a hearing officer, in accordance with statute, but contrary to California Constitution, article XIII, section 16; 64 Ops.Cal.Atty.Gen. 156, 162-164 (1981)--State Board of Equalization required to administer a

_____

[7]The reference to bonded indebtedness approved by a two-thirds vote after July 1, 1978, was added June 3, 1986.

[8]Of course, the agency would be required to obey a superior court order as it directly relates to the issue, should the lower court declare the statute unconstitutional. (See *Fenske* v. *Board of Administration* (1980) 103 Cal.App.3d 590, 595-596.)

local use tax ordinance which, pursuant to statute, but in violation of California Constitution, article XIII A, section 4, was approved by a mere majority of electorate.)

Article III, section 3.5, has been considered in connection with local agencies (*Schmid* v. *Lovette* (1984) 154 Cal.App.3d 466, 473-474--local school district; *Westminster Mobile Home Park Owners' Assn.* v. *City of Westminster* (1985) 167 Cal.App.3d 610, 619--city arbitrator; 68 Ops.Cal.Atty.Gen. 209, 219-220 (1985)--county assessor; 64 Ops.Cal.Atty.Gen. 690, 694-695 (1981)--county board of equalization), and in connection with agencies headed by an officer (*Valdes* v. *Cory* (1983) 139 Cal.App.3d 773, 780--State Controller, Director of Finance; 68 Ops.Cal.Atty.Gen. 209, 219-220 (1985)--county assessor; 62 Ops.Cal.Atty.Gen. 365, 367 (1979)--Secretary of State.)

Consequently, a county is not precluded, in the absence of an appellate court determination of invalidity or a superior court order, from implementing the provisions of section 15234.

\* \* \* \* \*