[No. C004348. Third Dist. Aug. 12, 1988.]

INSURANCE INDUSTRY INITIATIVE CAMPAIGN
COMMITTEE et al., Petitioners, v.
MARCH FONG EU, as Secretary of State, etc., et al., Respondents;
INSURANCE CONSUMER ACTION NETWORK, INC., et al.,
Real Parties in Interest.

962

---

COUNSEL

Munger, Tolles & Olson, Allen M. Katz, Mark B. Helm, Ball, Hunt, Hart, Brown & Baerwitz, John R. McDonough and Allan E. Tebbetts for Petitioners.

Gene Livingston, Fred J. Hiestand and Thomas A. Skornia as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Friedman, Sloan & Ross, Stanley J. Friedman, Jeffrey S. Ross, James A. Dorskind and Joanne S. Abelson for Real Parties in Interest.

Remcho, Johansen & Purcell, Joseph Remcho, Kathleen J. Purcell and Lowell Finley as Amici Curiae on behalf of Real Parties in Interest.

---

OPINION

**PUGLIA, P. J.**—Petitioners seek a writ of mandate directing the Secretary of State to refrain from placing the "Insurance Reform and Consumer Protection Act of 1988" (the initiative) on the November 1988 general election ballot. Real parties in interest, Insurance Consumer Action Network, Inc. and Steven Miller (collectively, ICAN) are, respectively, the primary supporter and proponent of the initiative. Petitioners claim the initiative violates the single subject rule contained in article II, section 8, subdivision (d) of the California Constitution. This is the second time we have considered this petition. This is the second time we shall deny it.[1]

---

[1] ICAN began circulating the initiative in February 1988, immediately after it was given a title and summary by the Attorney General. Petitioners did not file this writ application until April 28. During the period between February and April 28 this court was considering a similar challenge to a competing initiative backed by the insurance industry. (See *California Trial Lawyers Assn.* v. *Eu* (1988) 200 Cal.App.3d 351 [245 Cal.Rptr. 916].) Even so, it was almost two weeks after we filed our decision in *California Trial Lawyers* upholding the challenge before petitioners stirred themselves to commence this proceeding. While the instant petition was pending before this court, ICAN submitted petitions bearing over 650,000 signatures to county registrars of voters and county clerks. On May 12, we issued an order, final

Petitioners assert that sections 11 and 17 of the initiative run afoul of the single subject rule. ■ As we recently pointed out in *California Trial Lawyers Assn.* v. *Eu, supra,* 200 Cal.App.3d at page 358: ". . . initiatives encompassing a wide range of diverse measures will withstand challenge so long as their provisions are 'either functionally related to one another or . . . reasonably germane to one another or the objects of the enactments.'" (See *Harbor* v. *Deukmejian* (1987) 43 Cal.3d 1078, 1100 [240 Cal.Rptr. 569, 742 P.2d 1290]; *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 253 [186 Cal.Rptr. 30, 651 P.2d 274]; *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 229-232 [149 Cal.Rptr. 239, 583 P.2d 1281].) Applying this standard, we remain unpersuaded by petitioners' arguments that the initiative violates article II, section 8, subdivision (d) of the Constitution.[2]

---

immediately, denying the petition without opinion. Petitioners delayed until May 23 before filing their petition for review in the Supreme Court. While that petition was pending, the Secretary of State on June 3 certified that the initiative had qualified for the November 8 ballot. On June 30, the Supreme Court concluded its consideration of the case with an order granting review, but transferring the matter to this court with directions to issue an alternative writ, ". . . to be heard before [this] court when the proceeding is ordered on calendar." The Supreme Court further directed that we ". . . give expeditious consideration to the matter." On July 5 we issued an alternative writ and ordered the return served and filed "on or before" July 25 and any replication within "10 days after service of the return upon the petitioner." No date was set for oral argument at that time.

On July 7 petitioners, pleading urgency, requested this court order briefing accelerated and calendar the proceeding for oral argument "sometime in July." That request was denied on July 12. On July 15 petitioners applied to the Supreme Court for a writ of mandate commanding this court to calendar and decide this proceeding no later than August 12. In their application petitioners complained: "The briefing schedule set by the Court of Appeal in this matter, which was ordered expedited by the Supreme Court, is nevertheless much more drawn out than the briefing schedule previously established by the Court of Appeal in a prior mandate proceeding in which the California Trial Lawyers Association successfully challenged a statewide initiative petition circulated by the insurance industry. [*California Trial Lawyers Assn.*] v. *Eu* (1988) [200 Cal.App.3d 351], 245 Cal. Rptr. 916."

The briefing schedule in this proceeding followed the standard 20- and 10-day periods allowed when the court issues an alternative writ. When, as in *California Trial Lawyers Assn.* v. *Eu, supra,* the court proposes to issue a peremptory writ without first issuing an alternative writ (see *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893]) the standard practice is to allow no more than 15 days for opposition. Finally, briefing schedules aside, if this proceeding had not been advanced over other cases awaiting argument and decision, it would not have been calendared for oral argument until January 1989 and would have been decided sometime before the end of April 1989.

The Supreme Court denied the petitioners' application for expedited argument and decision on July 21. The return was filed July 25 and on July 28 we scheduled oral argument for August 10, 1988.

[2] Although we address the merits of the petition we believe it would be well within our discretion to deny the petition on the grounds that the initiative process has advanced to a point where preelection review is inappropriate for the reasons explained in *Brosnahan* v. *Eu* (1982) 31 Cal.3d 1, 2-3 [181 Cal.Rptr. 100, 641 P.2d 200]. (And see *California Trial Lawyers Assn.* v. *Eu, supra,* at p. 357.) We are also cognizant of the fact that here, in contrast to *California Trial Lawyers,* a decision granting the petition would render it impossible for the pro-

■   We first consider section 11 of the initiative. Current law prohibits banks from engaging in the insurance business, either as insurers, agents or brokers. (Fin. Code, § 772; Ins. Code, § 1643.) Section 11 of the initiative would remove statutory limitations and authorize banking institutions to compete in the insurance industry. Petitioners contend such a change is not reasonably germane to the purposes of the initiative. We disagree.

Section 11 is directly relevant to consumer protection, an objective announced in the title of the initiative. The purposes of the initiative, as more particularly spelled out in its section 3, include: "To open insurance markets to increased competition and thereby to provide an abundant supply of insurance products and services at reasonable, stable prices, and to provide consumers with the information necessary to take advantage of the competitive market." By fostering greater competition in the insurance industry, the proponents theorize a reduction or at least a lessening in the rate of increase of insurance premiums will result. Whether increased competition will benefit consumers and whether that objective is effectively advanced by section 11 of the initiative is for the voters to decide. The wisdom of the proposal in social and political terms is not a factor for us to consider in analyzing compliance with California Constitution, article II, section 8, subdivision (d). (*Amador,* supra, 22 Cal.3d at p. 219.) It is enough to find, as we do, that the removal of statutory restraints on the types of entities which may sell insurance is rationally linked to the overall goal of increasing competition in the field and, by operation of market forces, protecting consumers from escalations in the cost of insurance.

Petitioners make much of the fact that, in their view, the primary purpose of statutory limitations on the scope of operations of banking institutions is the protection of their financial integrity and the safeguarding of depositors' investments. Thus, petitioners' argument proceeds, since the purpose of these limitations is not related to insurance rates or competition, their removal is not reasonably germane to the subject of an initiative dealing with those topics. Even if we accept petitioners' premise, we fail to see the relevance of the argument to the present inquiry. The single subject rule does not require that an initiative which would repeal existing law share the underlying purpose of the law to be repealed. The question is whether the *repeal* as proposed by the initiative is germane to the purposes and objects of the initiative. While the policy reasons which led to the prohibitions on banks selling insurance may constitute persuasive arguments against the repeal of those limits, their removal is nonetheless related to the general

ponents of the initiative at this late time to circulate and qualify for the November ballot a substitute initiative. For an explanation of why the petition is belated within the meaning of *Brosnahan* v. *Eu, supra,* see footnote 1, *ante.*

purpose of the initiative, i.e., to moderate the cost of insurance to the consumer through increased competition.

■ The second portion of the initiative which petitioners challenge as violative of the single subject rule relates to attorney's fees. Section 17 of the initiative would add a new section 6146.6 to the Business and Professions Code. The proposed statute reads as follows: "In addition to any other obligation imposed upon attorneys by law, attorneys shall advise prospective clients in writing that fees are not set by law, but are negotiable without restriction between attorney and client. Fees shall not be set by law. The existing right of clients to negotiate fees without restriction and to receive written fee agreements is hereby ratified. [¶] When fees are based on the amount recovered, the contract shall specifically state whether the calculation is based on recovery before or after deduction of costs and expenses. [¶] The provisions of this section do not apply to any matter for which attorneys' fees are set by statute existing on January 1, 1988."

Characterizing the objective of the initiative as "clearly that of reducing and controlling insurance rates," petitioners assert that section 17 fails to advance that objective. However, petitioners' description of the objective of the initiative is too restrictive. It is broader than the mere control and reduction of rates. Through a variety of substantive and regulatory provisions not directly concerned with the cost of premiums, the initiative also takes aim at insurance industry practices its proponents perceive as unfair to consumers. Among these are provisions not only guaranteeing the continued availability of existing legal remedies but conferring certain new rights on consumers of insurance which may be enforced by actions for injunctive relief, compensatory or punitive damages and restitution penalties.

Petitioners also contend section 17 transcends the one subject limitation because it applies broadly to attorney's fees in all cases irrespective of the presence or not of insurance coverage. ICAN responds that the existence of insurance coverage often cannot be ascertained until after an action is filed and discovery is conducted. (See Code Civ. Proc., § 2017, subd. (b); *Laddon v. Superior Court* (1959) 167 Cal.App.2d 391 [334 P.2d 638].) ICAN further points out that fee agreements of necessity are negotiated at the very outset of a case when the existence or not of insurance coverage is unknown; thus it would be impractical to formulate a rule to govern fee agreements only in cases where there is known to be insurance coverage because of the impossibility in many cases of determining that fact at the time the agreement is negotiated.

Although drafting a narrower rule would present difficulties, we are not prepared to say that it could not have been done. Nevertheless, even a narrower rule would probably be overinclusive since some overbreadth is inevitable in virtually all legislation that is not underinclusive. In other words, the drafters do not have to score a bull's-eye; they need only be on target. Section 17 meets that criterion. Although insurance coverage may be most common in tort actions, it is not uncommon in many other kinds of legal actions to enforce substantive rights. Since section 17 is substantially germane to the object of the initiative, we need not consider the question whether a provision with only a tenuous nexus to the subject of the initiative of which it is a part can nevertheless be *"reasonably* germane" (*Harbor, supra,* 43 Cal.3d at p. 1100, italics added) to its objects and purposes.

By assuring consumers the right freely to negotiate legal fees, section 17 provides a mechanism logically related to the proponents' express statement of purpose set forth in section 3, paragraph h: "To guarantee consumers the right to prompt and fair compensation for legitimate insurance claims and to deter unfair insurance practices." This statement of purpose affords reasonable notice to the voters that legal actions necessarily implicating attorney's fees might well be used to accomplish the initiative's announced goal.

Whether a "free market" system for setting legal fees will in fact enhance the access of consumers to competent legal counsel to pursue legitimate insurance claims and vindicate their rights against insurers who engage in unfair practices is a question properly confided to the electorate. We have no basis to dispute the claimed purpose of section 17 and that purpose constitutes a sufficient nexus to the objects of the initiative such that section 17 is reasonably germane for purposes of article II, section 8, subdivision (d) of the Constitution.

Our recent decision in *California Trial Lawyers Assn.* v. *Eu, supra,* is of no assistance to petitioners. In that case we considered a proposed initiative which would have created a "no-fault" insurance system and which contained provisions relating to rates and insurance company practices. We determined that it transgressed the single subject rule by its inclusion of provisions protecting the right of special interest groups to make campaign contributions to elected state officials and exempting officials who received contributions from disqualification in acting on official matters affecting a contributor. The question there was not a close one because as we pointed out, even the proponents of the initiative did not (could not?) ". . . essay to explain how [the provision] exempting 'public officials' from rules which would otherwise disqualify them from acting in matters affecting the interests of their campaign contributors, would operate to advance the initia-

tive's announced purpose of controlling spiralling insurance costs." (200 Cal.App.3d at p. 359.) Furthermore, the proponents' description of the initiative as a "no-fault" insurance reform measure gave "no clue" that the measure dealt with political campaign contributions. (At p. 361.) In contrast the proponents of the initiative here have given fair notice of its content in their statement of purpose and have proposed plausible reasons why the initiative's provisions are reasonably germane to its subject. As we have explained, we believe the proponents have the better arguments.

Petitioners complain that the Attorney General's summary does not specifically mention the subjects with which sections 11 and 17 deal. ■  Assuming, for present purposes only that the omission renders the summary legally inadequate and incomplete, we have been cited to no authority nor are we aware of any holding that an initiative may be struck down as violative of the single subject rule solely because the Attorney General has misdescribed it.[3] Although we observed in *California Trial Lawyers* v. *Eu, supra*, that the danger of voter deception may inhere in this circumstance, there was an actual violation of the single subject rule in that case. (200 Cal.App.3d at p. 631.) The point of our discussion was that given such a violation, an incomplete title, summary or description by the Attorney General "heightened" (*ibid.*) the potential for misleading the voters. Here, in contrast, our determination that sections 11 and 17 satisfy the "reasonably germane" test satisfies the single subject requirement of the Constitution and ameliorates any deleterious impact the claimed deficiencies in the Attorney General's summary or description might otherwise have had.

Summarizing, we reject petitioners' arguments that the initiative violates article II, section 8, subdivision (d) of the California Constitution. Accordingly, the petition is denied, the order issuing the alternative writ is vacated and the alternative writ is quashed (*Fink* v. *Superior Court* (1930) 105 Cal.App. 540, 545 [288 P. 124]; see *Los Angeles Drug Co.* v. *Superior Court* (1936) 8 Cal.2d 71, 73 [63 P.2d 1124]). This order renders our decision final immediately and affords petitioner an opportunity, if so disposed, to obtain review in the Supreme Court within the time in which improper matter may still be excluded from the November ballot. As petitioners have advised us, such relief has been obtained as late as August 27 of an election year. (See

---

[3] Amicus Curiae Association for California Tort Reform (ACTR) argues that the failure to include a clear reference to section 17 in the title and summary constitutes a separate and independent basis for invalidating the initiative under article II, section 8. ACTR is apparently relying on article IV, section 9 of the Constitution which applies to statutes and provides that when ". . . a statute embraces a subject not expressed in its title, only the part not expressed is void." Petitioners did not tender this issue either in their petition originally filed in this court or in the petition for review in the Supreme Court. Accordingly, we do not address it.

*American Federation of Labor* v. *Eu* (1984) 36 Cal.3d 687 [206 Cal.Rptr. 89, 686 P.2d 609].)

Carr, J., and Sims, J., concurred.

Petitioners' application for review by the Supreme Court was denied September 1, 1988.