[No. D021547. Fourth Dist., Div. One. Oct. 30, 1995.]

CALIFORNIA GILLNETTERS ASSOCIATION et al., Plaintiffs and Appellants, v.
DEPARTMENT OF FISH AND GAME et al., Defendants and Respondents;
DORIS ALLEN et al., Interveners and Respondents.

1146

COUNSEL

Peter H. Flournoy for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Charles F. Getz IV, Assistant Attorney General, and Carol A. Squire, Deputy Attorney General, for Defendants and Respondents.

Irell & Manella and Lawrence E. Goldenhersh for Interveners and Respondents.

OPINION

McDONALD, J.—In 1990 the California voters passed the Proposition 132 (Cal. Const. art. X B)[1] initiative. Among other things, Proposition 132 banned the use of certain types of fishing gear along large portions of the California coastline. Appellants are fishermen adversely affected by this ban and seek to void Proposition 132.

I

*Factual and Procedural History*

Appellants are commercial fishermen who have fished California's "inshore" waters within three miles from the coast using gill and trammel nets (collectively gill nets).

In November 1990, California voters passed Proposition 132, which provides for:

(1) elimination of the use after January 1, 1994, of gill nets in the Marine Resources Protection Zone, which essentially encompasses the "inshore" fishing areas of Central and Southern California;

(2) authorization, subject to the adoption of enabling legislation, to compensate qualified fishermen for the loss of their ability to conduct gillnetting operations;

(3) imposition of additional license and stamp fees to create a fund (the Marine Resources Protection Fund) to pay the costs of the compensation

---

[1] All references to sections and subdivisions are to Proposition 132 unless otherwise specified.

program and the administration of the act, with any surplus funds to be used for scientific research in the area of marine resource management; and

(4) authorization for the California Fish and Game Commission "to establish four new ocean water ecological reserves for marine research purposes."

In the proceedings below, appellants challenged the validity of Proposition 132. The trial court rejected the challenge and granted summary judgment for respondents.[2] On appeal, appellants assert that Proposition 132 (1) deprives them of equal protection, (2) deprives them of liberty and property without due process, (3) violates the so-called "single subject" requirement of the initiative process, (4) violates the constitutional guarantee of a republican form of government, and (5) is tainted by flaws in the ballot pamphlet.

II

*The Equal Protection Claims*

 Appellants assert that Proposition 132 is unconstitutional in violation of the equal protection clauses of the federal and state Constitutions because it: (1) prohibits appellants from harvesting fish along the in-shore areas while permitting others to fish in the same areas for sport; (2) forces appellants to pay for research in the newly created ecological reserves which will benefit the general public; and (3) establishes compensation provisions which pay more to some gill-netters than other gill-netters.

1. *Appellants' Equal Protection Challenges to Proposition 132 Must Be Evaluated Under the "Rational Basis" Test*

 Appellants' equal protection challenges are based on the argument that the classifications established by Proposition 132 violate constitutional protections. California follows the federal approach to evaluating whether a legislative classification transgresses the equal protection clause. (*Graham* v. *Kirkwood Meadows Pub. Util. Dist.* (1994) 21 Cal.App.4th 1631, 1642 [26 Cal.Rptr.2d 793].) In *Board of Supervisors* v. *Local Agency Formation Com.* (1992) 3 Cal.4th 903 [13 Cal.Rptr.2d 245, 838 P.2d 1198], the court explained the standard for evaluating a classification equal protection challenge: "Not all statutes classify, but many do, and whenever the classification is challenged under the equal protection clause, we must decide its

---

[2]The respondents are the Department of Fish and Game (D.F.G.), the State of California, the Attorney General of the State of California, Doris Allen, the Committee to Ban Gill Nets, the Dolphin Connection, and the Earth Island Institute.

validity under one of the standards of deference required of us. [Citation.] [¶] When a law impinges on certain fundamental rights . . . it will ordinarily be subject to strict judicial scrutiny. Under this very severe standard, a discriminatory law will not be given effect unless its classification bears a close relation to the promoting of a compelling state interest, the classification is necessary to achieve the government's goal, and the classification is narrowly drawn to achieve the goal by the least restrictive means possible. [Citations.] [¶] For most legislation, however, a court will apply the rational basis test. The 'standard formulation of the test for minimum rationality' [citation] is whether the classification is 'rationally related to a legitimate governmental purpose.' [Citation.]" (*Id.* at p. 913.)

Thus, the "rational basis" test is the appropriate standard of review unless the classification affects a "fundamental right." (*Dallas* v. *Stanglin* (1989) 490 U.S. 19, 23 [104 L.Ed.2d 18, 24, 109 S.Ct. 1591]; *Graham* v. *Kirkwood Meadows Pub. Util. Dist.*, *supra*, 21 Cal.App.4th 1631.) ▉ Appellants advocate using "strict scrutiny" because they assert that Proposition 132 interferes with the "right to fish" and the "right to work," which appellants contend are "fundamental." Respondents contend neither of those rights rises to the level of "fundamental rights" for purposes of employing strict scrutiny, and argue the classifications must be tested under the "rational basis" test.[3]

(A) *There Is No Fundamental Right to Fish*

Appellants argue the addition of article I, section 25 to the California Constitution elevated the "right to fish" to a fundamental right in California for purposes of the equal protection clause.[4] We disagree. First, because article I, section 25 expressly authorizes legislative regulation of fishing, the constitutional language creates only a qualified right to fish. Appellants' argument that mention of an interest in the California Constitution elevates that interest to a fundamental right for purposes of strict scrutiny was rejected in the analogous case of *Graham* v. *Kirkwood Meadows Pub. Util.*

---

[3]The trial court applied the "rational basis" test to the legislative distinction between gill-netters and other fishermen, and, using that test, concluded the law was valid because the distinction bore a "rational relation" to a legitimate governmental purpose.

[4]Article I, section 25 of the California Constitution declares: "The people shall have the right to fish upon and from the public lands of the State and in the waters thereof, excepting upon lands set aside for fish hatcheries, and no land owned by the State shall ever be sold or transferred without reserving in the people the absolute right to fish thereupon; and no law shall ever be passed making it a crime for the people to enter upon the public lands within this State for the purpose of fishing in any water containing fish that have been planted therein by the State; provided, that the Legislature may by statute, provide for the season when and the conditions under which the different species of fish may be taken."

*Dist., supra,* 21 Cal.App.4th 1631. In *Graham,* an employment policy required employees to reside within three miles of the waste treatment plant. (*Id.* at p. 1635.) The appellant claimed the policy should be subjected to strict scrutiny because article XI, section 10, subdivision (b) of the California Constitution prohibited residency limitations on employees. The court concluded the policy should be tested under the rational basis test because section 10, subdivision (b) of article XI *permitted* reasonable distance qualifications and therefore did *not* create a fundamental right subject to strict scrutiny. (21 Cal.App.4th at pp. 1643-1644.) Similarly, article I, section 25 allows limitations on the right to fish, which under *Graham* makes regulation of fishing subject to the "rational basis" test.

Second, the courts have concluded California Constitution, article I, section 25 was directed to a narrow issue and was not intended to curtail the traditional legislative prerogative to regulate fishing. (*Paladini* v. *Superior Court* (1918) 178 Cal. 369, 371-372 [173 P. 588].) The power to regulate fishing has always existed as an aspect of the inherent power of the Legislature to regulate the terms under which a public resource may be taken by private citizens. (*In re Phoedovius* (1918) 177 Cal. 238, 245-246 [170 P. 412] [fish and game " 'can never be the subject of commerce except with the consent of the state *and subject to conditions which it may deem best to impose for the public good'* " (original italics)]; *People* v. *Monterey Fish Products Co.* (1925) 195 Cal. 548, 563 [234 P. 398, 38 A.L.R. 1186] [fish are property of the state, and " 'what the people of the state own they can alienate on such terms as they choose to impose' "].) In *Paladini* v. *Superior Court, supra,* the appellant argued a statute which provided for the licensing of fishermen and granted the state authority to fix prices was unconstitutional because it violated the absolute right to fish under article I, section 25. The *Paladini* court rejected the argument because it concluded the purpose of adding article I, section 25 was limited in that it was designed to preserve the people's right to fish on public lands by mandating that any future grants of public property include a reservation of public fishing rights on that land. With that limited exception, *Paladini* concluded the traditional legislative power to regulate fishing was not curtailed by article I, section 25. (*Paladini* v. *Superior Court, supra,* at p. 372 [article I, section 25 "was evidently intended to leave the matter exactly as it was before the adoption of this amendment . . . except as it restricted the power to alienate public land without such reservation . . . [and] gave no right to the people which they did not already have"].)

(B) *There Is No Fundamental Right to Work*

Appellants claim there is a fundamental right to work and elimination of the use of gill nets interferes with their right to work. However, the courts

have repeatedly held that legislative enactments affecting the "right to work" are tested under a rational basis and not the strict scrutiny analysis because there is no fundamental right to work. (*Graham* v. *Kirkwood Meadows Pub. Util. Dist.*, *supra*, 21 Cal.App.4th at pp. 1644-1646; *Rittenband* v. *Cory* (1984) 159 Cal.App.3d 410, 417-419 [205 Cal.Rptr. 576]; *Kenneally* v. *Medical Board* (1994) 27 Cal.App.4th 489, 496-498 [32 Cal.Rptr.2d 504].)

Appellants rely on language in several administrative review cases suggesting the right to work is fundamental. While those cases correctly note the right to work is sufficiently important to warrant heightened judicial review of administrative rulings affecting that right, those cases are irrelevant here. The courts have repeatedly cautioned that while a particular right such as the right to work may have sufficient gravity to warrant heightened judicial scrutiny of *administrative rulings* affecting that right, that status does not elevate the right to one that is "fundamental" for purposes of strictly scrutinizing *legislative enactments* regulating the right. (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 396-397 [188 Cal.Rptr. 891, 657 P.2d 383] ["it [is] abundantly clear that the applicability of the independent judgment standard of review [in administrative review cases] does not in any sense suggest that legislative measures pertaining to the individual interest at issue are properly subject to strict scrutiny review"]; *Graham* v. *Kirkwood Meadows Pub. Util. Dist.*, *supra*, 21 Cal.App.4th at p. 1645 ["fundamentality for purposes of the judicial standard of review of administrative decisions . . . is distinct from the question of fundamentality for equal protection purposes"].) Recognizing that distinction, the courts have concluded that legislative enactments affecting the right to work are tested under a "rational basis" test because there is no fundamental right to work at a particular occupation or for a particular employer.[5] (*Graham* v. *Kirkwood Meadows Pub. Util. Dist.*, *supra*, at pp. 1645-1646; *Kenneally* v. *Medical Board*, *supra*, 27 Cal.App.4th at p. 498.)

Because no "fundamental rights" are affected, we test the equal protection permissibility of the classification in Proposition 132 using the "rational basis" test. This test evaluates whether the classification bears a rational relationship to a legitimate state purpose (*Graham* v. *Kirkwood Meadows Pub. Util. Dist.*, *supra*, 21 Cal.App.4th at p. 1631) and is satisfied in this case.

---

[5]In attempting to distinguish the cases declaring there is no fundamental right to work at a particular occupation or for a particular employer, appellants argue Proposition 132 prevents them from working at all. We cannot agree. Appellants may work at other occupations, or may fish using nonrestricted gear; Proposition 132 precludes them only from pursuing a specified method of fishing.

## 2. *The Classification Between Gill-Net Fishermen and Other Fishermen Has a Rational Relationship to a Legitimate Public Concern*

 The parties agree that preservation of marine resources is a valid state interest. (*People* v. *Weeren* (1980) 26 Cal.3d 654, 666 [163 Cal.Rptr. 255, 607 P.2d 1279].) Proposition 132 distinguishes mass harvesting of fish with gill nets from other forms of fishing, and a ban on the former while permitting the latter is rationally related to preserving marine resources. Other courts have concluded a ban on gillnetting is rationally related to legitimate governmental purposes. (See, e.g., *LaBauve* v. *Louisiana Wildlife & Fisheries Com'n* (E.D.La. 1978) 444 F.Supp. 1370, 1382-1385.)

Appellants' claim that the classification between gill-netters and other fishermen lacks a rational basis is essentially a request that we reweigh the wisdom of adopting a complete ban rather than some other form of regulation. We do not test the validity of Proposition 132 by evaluating its economic or social wisdom, but instead evaluate whether it meets constitutional standards. (*Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 814 [258 Cal.Rptr. 161, 771 P.2d 1247].) Because there is a rational basis for the classification between types of fishermen drawn by Proposition 132, the classification does not violate equal protection.

## 3. *The "Marine Resources Protection Account" Has a Rational Relationship to a Legitimate Public Concern*

Appellants next argue Proposition 132 violates equal protection by requiring appellants and other fishermen to bear the entire financial burden for research within the ecological reserves which will benefit the general public. In *Cunningham* v. *Superior Court* (1986) 177 Cal.App.3d 336 [222 Cal.Rptr. 854], the court noted that when a state imposes the cost of a public benefit upon a particular class of persons the program will transgress the equal protection clause if there is no rational basis for charging that cost to the selected class. (*Id.* at p. 348.) "A statute obviously violates the equal protection clause if it selects one particular class of persons for a species of taxation *and no rational basis supports such classification.*" (*Dept. of Mental Hygiene* v. *Kirchner* (1964) 60 Cal.2d 716, 722 [36 Cal.Rptr. 488, 388 P.2d 720, 20 A.L.R.3d 353], remanded 380 U.S. 194 [13 L.Ed.2d 753, 85 S.Ct. 871], sub. opn. 62 Cal.2d 586 (43 Cal.Rptr. 329, 400 P.2d 321, 20 A.L.R.3d 361)], italics added.) Therefore, we examine whether there is a rational basis for the funding of the program.

Proposition 132 established the "Marine Resources Protection Account" (the fund), which is funded from three sources: fees charged for permits to

conduct in-shore gillnetting operations during the three-year "phase-out" period which preceded the ban (§ 5); a fee charged to sports fishermen for a "marine resources protection stamp" for those fishing south of Point Arguello (§ 8, subd. (c)); and a fee charged to operators of commercial passenger fishing boats for a "commercial marine resources protection stamp" for those operating in waters south of Point Arguello (§ 8, subd. (d)). The first two priorities for payments from the fund are to compensate qualified gill-netters who lost the ability to fish and to pay for administering the act. (§ 8, subds. (a) and (b).) Any remainder in the fund after January 1, 1995, could be used to pay for marine resources research in the newly established ecological reserves. (§ 9.)

We conclude there is a rational relationship between those who were taxed to create the fund and those who benefited from the fund. Gill-netters who reaped profits from post-1990 gillnetting operations were required to contribute to a fund the primary purpose of which was to ease the burden of the eventual ban on gillnetting. Commercial and recreational sports fishermen, who benefited from the more plentiful in-shore fishing opportunities when competition from gill-netters was eliminated, were compelled to contribute toward helping those whose gear became obsolete. Finally, because both groups had contributed, at least to some extent, to the depletion of ocean resources, it was reasonable to direct any remainder in the fund to researching marine resource issues.

## 4. *The Compensation System Is Adequate and Severable*

Appellants' final equal protection argument asserts it is arbitrary and capricious to compensate gill-netters who had fished in the exclusion zone during the years 1983 through 1987 (see § 7, subd. (b)) while excluding others from compensation. In evaluating any challenge to an initiative, we indulge all presumptions in favor of its validity and resolve all reasonable doubts in its favor, and we must uphold an initiative unless its unconstitutionality "clearly, positively, and unmistakably appears." (*Legislature* v. *Eu* (1991) 54 Cal.3d 492, 501 [286 Cal.Rptr. 283, 816 P.2d 1309].)

Here appellants fail to carry their burden of establishing that no "rational basis" exists for compensating the selected group. (*Graham* v. *Kirkwood Meadows Pub. Util. Dist., supra,* 21 Cal.App.4th at p. 1646.) To the contrary, there is a rational basis for the compensation scheme. First, it directs compensation to those most affected by the ban (i.e., long-term participants in gillnetting within the exclusion zone) while reducing or

denying compensation to relative newcomers to the industry.[6] Second, the classification promotes the ability to administer the compensation provisions because the selected 1983 to 1987 period apparently encompassed a time in which D.F.G. "landings" records had been computerized and could be used to reconstruct the data necessary to compute compensation.[7]

Moreover, even if the selection of the 1983 to 1987 group could be deemed arbitrary, Proposition 132 remains valid if the compensation provisions are severable from the balance of the initiative. (*Calfarm Ins. Co.* v. *Deukmejian, supra,* 48 Cal.3d at p. 821 [where invalid portion of initiative is severable, balance of initiative remains valid law].) Proposition 132 contains a "severability" clause providing that the invalidity of one part will not affect the validity of any other part which can be given effect without the invalid part. (§ 16.) ▓▓▓ Explaining the effect of a severability clause, the *Calfarm* court stated: " 'Although not conclusive, a severability clause normally calls for sustaining the valid part of the enactment, especially when the invalid part is mechanically severable. . . . Such a clause plus the ability to mechanically sever the invalid part while normally allowing severability, does not conclusively dictate it. The final determination depends on whether the remainder . . . is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute . . . .' [Citations.] [¶] The cases prescribe three criteria for severability: the invalid provision must be grammatically, functionally, and volitionally separable. [Citations.]" (*Calfarm. Ins. Co.* v. *Deukmejian, supra,* 48 Cal.3d at p. 821.)

▓▓▓ All three criteria are met here. Proposition 132 contains 16 sections, and only one section (§ 7) has compensation as its principal focus. Section 7 is grammatically severable. It is also functionally severable: the remaining sections (a) title and define the terms of the enactment (§§ 1, 2); (b) enact the restrictions on gill nets (§§ 3, 4); (c) establish special permitting for the phase-out period (§§ 5, 6); (d) provide for the use of the fund to administer

[6]Indeed, the record suggests "newcomers" (i.e., persons beginning gillnetting after 1987) were relatively rare, because there was a moratorium on issuing new general gill and trammel net permits beginning in 1986. It appears the only way a newcomer could enter the industry after 1985 was by obtaining a transfer of an existing license.

[7]The compensation was calculated as a one-time payment equal to the average annual ex-vessel value of fish (other than rockfish) landed by fishermen from the exclusion zone. (§ 7, subd. (b).) The record indicates that during the period 1983 through 1987 permitees had submitted "fish tickets" and "logbook data" which had been routinely entered in the D.F.G. computer data bases, from which a claimant's fishing history could be reconstructed even if he no longer had his copies of the log books and fish tickets. Selecting the 1983 to 1987 period thus facilitated the determination of the average annual value of fish which formed the basis for compensating the qualified gill-netters.

the act, pay compensation and fund research (§§ 8, 9 & 10); (e) provide for penalties for violating the act (§§ 11, 13); (f) provide for information gathering (§ 12); and (g) establish ecological reserves (§ 14).[8]

Because mechanical and functional severability are satisfied, we evaluate the third criterion: whether section 7 is "volitionally" severable from the balance of Proposition 132. ▉ This element examines whether it is likely the initiative would have been adopted by the electorate had there been no compensation provision. (*Calfarm Ins. Co.* v. *Deukmejian, supra,* 48 Cal.3d at p. 822.) We may examine the proposition itself, as well as the ballot materials, to evaluate this issue. (*Gerken* v. *Fair Political Practices Com.* (1993) 6 Cal.4th 707, 714-717 [25 Cal.Rptr.2d 449, 863 P.2d 694].)

▉ We are convinced the remainder of Proposition 132 meets the "volitional severability" element. First, an examination of the ballot materials shows the promoters of Proposition 132 focused primarily on its "environmental" aspects, including the ending of allegedly destructive fishing methods of gill-netters.[9] These environmental benefits have a substantial purpose independent of the compensation provisions.

Second, the provisions of Proposition 132 show the electorate in fact enacted the proposition knowing the compensation provisions might never take effect. Section 7, subdivision (d) specified no compensation would be paid unless the Legislature adopted enabling legislation. The "Analysis by the Legislative Analyst" which accompanied the ballot materials described the compensation program but cautioned that "[t]he measure prohibits the payment of compensation unless the Legislature enacts enabling legislation by July 1, 1993, to implement the compensation program." This demonstrates that the electorate did not require compensation as the "quid pro quo" for a ban on gillnetting, but instead favored the environmental aspects knowing that compensation might never be paid to affected gill-netters.[10]

---

[8]Of course section 8 (which creates the "Marine Resources Protection Account") of necessity alludes to compensation by declaring a portion of the fund be used for compensation. That section, however, is no longer operative.

[9]For example, in the "Argument in Favor of Proposition 132," all but two sentences of the lengthy argument were devoted to advocating passage to "stop the indiscriminate slaughter" wrought by gill nets, and only a single sentence described the compensation aspect.

[10]Appellants suggest compensation is essential to the constitutionality of Proposition 132 because, absent the compensation provision, the ban on gillnetting would violate the "takings" clause of the Constitution by taking appellants' property rights (vested in their nets and permits) without compensation. However, the court in *Burns Harbor Fish Co., Inc.* v. *Ralston* (S.D.Ind. 1992) 800 F.Supp. 722 rejected a nearly identical claim under similar facts. There the statute banned gillnetting, and the fishermen objected to the statute by asserting their nets

III

*The Due Process Claims*

■ Appellants assert the ban on gillnetting violates their right to "due process." They argue that they have both a liberty and a property interest in continuing to fish with gill nets, and that it is unconstitutional to deprive them of either their liberty or their property without first affording them due process.

Appellants' due process argument is unclear. To the extent appellants assert the Proposition 132 ban on gill nets violates *procedural* due process, the claim lacks merit. The guarantee of procedural due process applies when a person's liberty or property interests may be curtailed by an adjudicatory or quasi-adjudicatory action. (*Horn* v. *County of Ventura* (1979) 24 Cal.3d 605, 612-613 [156 Cal.Rptr. 718, 596 P.2d 1134].) ■ However, when legislation is enacted, procedural due process does not guarantee the affected person a right to a hearing, even though the legislation may have a severe impact on the person or the person's property. (*San Diego Bldg. Contractors Assn.* v. *City Council* (1974) 13 Cal.3d 205, 210-211 [118 Cal.Rptr. 146, 529 P.2d 570] [enactment of zoning ordinance by initiative does not offend procedural due process].) "In the area of business regulation '[g]eneral statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.' " (*New Motor Vehicle Bd. of Cal.* v. *Orrin W. Fox Co.* (1978) 439 U.S. 96, 108 [58 L.Ed.2d 361, 374, 99 S.Ct. 403], quoting *Bi-Metallic Investment Co.* v. *Colorado* (1915) 239 U.S. 441, 445 [60 L.Ed. 372, 375, 36 S.Ct. 141].)

■ To the extent appellants assert Proposition 132 offends "substantive due process," the argument also fails. The power to regulate business is within the state's police power (*New Motor Vehicle Bd. of Cal.* v. *Orrin W. Fox Co., supra,* 439 U.S. at pp. 106-107 [58 L.Ed.2d at pp. 373-374]), and "[t]he day is gone when this Court uses the Due Process Clause . . . to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought." (*Williamson* v. *Lee Optical of Oklahoma* (1955) 348

---

and fishing licenses were property interests protected against a taking without just compensation. The court rejected those claims, noting (1) legislatures can pass business regulations which diminish the value of personalty without offending the "takings clause," and (2) a fishing license is a permit subject to revocation without compensation. (*Id.* at pp. 726-728.)

U.S. 483, 488 [99 L.Ed. 563, 572, 75 S.Ct. 461].) Instead, we evaluate business regulations under the deferential "rational basis" standard and must uphold the statute unless it is " 'arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt.' " (*Pennell* v. *San Jose* (1988) 485 U.S. 1, 11 [99 L.Ed.2d 1, 14, 108 S.Ct. 849].) Even statutes which severely restrict the pursuit of an occupation, and thus impinge on protected property interests, are tested under the "rational basis" standard. (See *Burns Harbor Fish Co., Inc.* v. *Ralston, supra,* 800 F.Supp. at pp. 729-733 [ban on gillnetting upheld as rationally related to legitimate state policy of conservation and resource allocation].)

Appellants do not demonstrate Proposition 132 is palpably unrelated to legitimate state interests. As previously discussed, there is a rational basis for the ban on gillnetting. Accordingly, appellants' "due process" claim fails.

## IV

### *The "Single Subject" Challenge*

 Appellants next assert Proposition 132 violates article II, section 8, subdivision (d) of the California Constitution, which prohibits any initiative from "embracing more than one subject." Appellants argue the "single subject" rule is violated because Proposition 132 embraces two unrelated subjects: (1) a ban on fishing with gill nets and (2) the creation of four ecological reserves.

 In *Legislature* v. *Eu, supra,* 54 Cal.3d 492, the court explained: " ' "[A]n initiative measure does not violate the single-subject requirement if, despite its varied collateral effects, *all of its parts are 'reasonably germane'* to each other" and to the general purpose or object of the initiative. . . .' [Quoting *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 245 [186 Cal.Rptr. 30, 651 P.2d 274]; second citation omitted.] [¶] In *Brosnahan,* we admonished that the single-subject rule 'obviously forbids joining disparate provisions which appear germane only to topics of excessive generality such as "government" or "public welfare." ' [Citation.] We continued by referring to our 'liberal interpretive tradition . . . of sustaining statutes and initiatives which fairly disclose a reasonable and commonsense relationship among their various components in furtherance of a common purpose.' [Citation.]" (*Id.* at p. 512, original italics.)

 Tested under these guidelines, Proposition 132 complies with the "single subject" rule because its components are reasonably germane to each other and to a common purpose: preservation of marine resources. Proposition 132: (1) bans allegedly destructive forms of fishing gear to reduce mortality among nontarget species, (2) provides for information gathering to further the scientific understanding of marine resource management, (3) provides for ecological reserves to create living laboratories in which to study the impact of fishing on marine resources, and (4) provides for fees assessed against the user groups to fund the various aspects of the program.

All aspects of Proposition 132 are reasonably germane to a coherent purpose: to foster conservation of marine resources.[11] Although appellants argue ecological reserves are wholly unrelated to a ban on gill nets, provisions for research targeted to fostering a better understanding of the resources which Proposition 132 was designed to conserve can be part of a comprehensive plan directed to a common purpose. (Accord, see *Kennedy Wholesale, Inc.* v. *State Bd. of Equalization, supra,* 53 Cal.3d at p. 254 [tobacco tax properly directed to research of tobacco-related diseases as part of comprehensive plan].)

Appellants also argue the "single subject" rule is violated merely because the statutes and regulations governing ecological reserves are not in the same Government Code location as those governing fishing gear. This does not constitute a "single subject" violation. (See, e.g., *Insurance Industry Initiative Campaign Com.* v. *Eu* (1988) 203 Cal.App.3d 961, 964-967 [250 Cal.Rptr. 320] [rejecting "single subject" challenge to initiative which

---

[11]Appellants argue that the twofold purpose of the "single subject" rule is to (1) avoid misleading voters with complex amalgamations of clauses and (2) avoid "logrolling" by combining numerous provisions which alone would not command a majority but together enlist a majority. (See *Schmitz* v. *Younger* (1978) 21 Cal.3d 90, 97-98 [145 Cal.Rptr. 517, 577 P.2d 652] (dis. opn. of Manuel, J.).) Appellants then weave together excerpts from ballot materials and the pro-Proposition 132 public relations campaign to show that the voters were confused and misled and that "logrolling" took place, from which appellants conclude the "single subject" rule was violated. However, the courts have recognized that the purpose of the "single subject" rule is to minimize voter confusion and "logrolling" (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 231-232 [149 Cal.Rptr. 239, 583 P.2d 1281]), and if the court determines the provisions are functionally related and reasonably germane to a common underlying purpose, the "single subject" rule is satisfied and there is no separate basis for invalidating the initiative merely because of alleged "logrolling" (see *Kennedy Wholesale, Inc.* v. *State Bd. of Equalization* (1991) 53 Cal.3d 245, 255 [279 Cal.Rptr. 325, 806 P.2d 1360]) or alleged voter confusion (see *Insurance Industry Initiative Campaign Com.* v. *Eu, supra,* 203 Cal.App.3d at p. 968).

altered provisions of Financial Code, Insurance Code and Business and Professions Code].)

## V

### The "Republican Form of Government" Challenge

■ Appellants assert the initiative process, by providing for the enactment of legislation by direct democracy, violates their right to a republican form of government under article IV, section 4 of the United States Constitution. Appellants rely on an array of studies criticizing the deficiencies of the initiative process. These deficiencies include the following: voter ignorance; false or misleading advertising campaigns appealing to passion rather than reason; the dangers inherent in distilling complex issues into simplified formats; and the ability of well-financed minorities to place special interest propositions on the ballot.

However, it is not within our purview to evaluate the wisdom or efficacy of the initiative process. Challenges under article IV, section 4 of the United States Constitution have been repeatedly rejected as political questions which are not justiciable. (See, e.g., *State of Ohio* v. *Akron Metropolitan Park Dist.* (1930) 281 U.S. 74, 79-80 [74 L.Ed. 710, 715-716, 50 S.Ct. 228, 66 A.L.R. 1460]; *Risser* v. *Thompson* (7th Cir. 1991) 930 F.2d 549, 552; *Baker* v. *Carr* (1962) 369 U.S. 186, 221-224 [7 L.Ed.2d 663, 688-690, 82 S.Ct. 691] [collecting cases holding issue to be nonjusticiable].) The enforcement of this clause is committed to the Congress, not to the courts. (*Williams* v. *City of San Carlos* (1965) 233 Cal.App.2d 290, 295 [43 Cal.Rptr. 486].) In rejecting a claim identical to that asserted by appellants that an initiative adopted by Oregon voters was invalid because the initiative process violated the guarantee of a republican form of government, the court in *Pacific States Teleph. & Teleg. Co.* v. *Oregon* (1912) 223 U.S. 118 [56 L.Ed. 377, 32 S.Ct. 224] held the issue was a nonjusticiable political question and dismissed for lack of jurisdiction. (*Id.* at pp. 149-151 [56 L.Ed. at pp. 385-386].)

Because well-established authority demonstrates the initiative process may not be challenged in the courts as violative of article IV, section 4 of the United States Constitution, we reject appellants' argument.

## VI

### *The "Ballot Materials" Challenges*

 Appellants finally argue there were deficiencies in the Proposition 132 ballot materials given to voters as part of the 1990 general election.[12] Appellants contend: (1) the Legislative Analyst failed to comply with its duty to provide a fiscal impact analysis of the newly created ecological reserves; (2) the ballot failed to contain all existing provisions of law which were repealed or revised by Proposition 132; and (3) the ballot should not have contained a two-paragraph statement of findings and purpose but instead should have contained only the text of the constitutional amendment.[13]

### A. *The "Legislative Analyst's Section"*

Former Elections Code section 3572 required the Legislative Analyst to prepare ". . . a fiscal analysis of the measure showing the amount of any increase or decrease in revenue or cost to state or local government." The Proposition 132 ballot pamphlet did contain this analysis, which indicated four areas in which "the measure" would have a fiscal effect. Appellants argue the fiscal analysis was deficient because it did not contain a separate assessment of the fiscal impact of the four ecological reserves. However, appellants do not argue and there is no evidence indicating the mere creation of the ecological reserves would have any *fiscal* impact *apart* from the areas of fiscal effect described in the ballot pamphlet. Accordingly, the analysis is adequate. (See *Tinsley* v. *Superior Court, supra,* 150 Cal.App.3d at p. 107

---

[12]Respondents argue any challenge appellants may have had based on alleged improprieties in the ballot materials is barred because the exclusive remedy was to pursue a preelection writ of mandate under former Elections Code section 3576. However, that section did not specify it was the *exclusive* remedy for allegedly defective ballot materials. Moreover, several courts have implicitly concluded a postelection challenge is available. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at pp. 242-244 [postelection challenge to Proposition 13 based on imprecision in titling and summary considered on merits]; *Tinsley* v. *Superior Court* (1983) 150 Cal.App.3d 90, 108-109 [197 Cal.Rptr. 643] [postelection challenge to Proposition 1 based on allegedly inadequate summary considered on merits].) Moreover, in *Horwath* v. *City of East Palo Alto* (1989) 212 Cal.App.3d 766 [261 Cal.Rptr. 108], the court explicitly concluded that former Elections Code section 5025, which provided a substantively identical procedure for challenging ballot materials by writ of mandate in connection with municipal measures, did not bar a postelection challenge to a ballot measure based on allegedly improper ballot materials. (*Horwath, supra,* at p. 772.) In light of our conclusion on the merits, however, it is unnecessary to decide whether appellants' claim is procedurally defective.

[13]In their opening brief, appellants also cite the Attorney General's duty to prepare a ballot title and summary of the measure, but do not explain in what respect this duty was breached.

[analysis which adequately describes impact of measure as a whole is adequate].)

B. *The "Existing Laws" Section*

The ballot pamphlet was required to contain all existing provisions of law which were repealed or revised by Proposition 132. (Former Elec. Code, §§ 3570 & 3571, subd. (e).) Appellants claim that Proposition 132 amended 52 sections of the Fish and Game Code, and that the ballot pamphlet should have included but did not include the text of those sections. However, Proposition 132 did *not* amend those sections. Instead, it merely limited the territorial scope of those sections.[14] Although Proposition 132 had an "impact" on those existing provisions of the Fish and Game Code by limiting the geographical area to which they applied, it did not amend or repeal those sections except as set forth in Proposition 132. The ballot pamphlet was adequate under former sections 3570 and 3571, subdivision (e). (*Tinsley* v. *Superior Court, supra*, 150 Cal.App.3d 90 [pamphlet need only set forth each provision being amended and is not required to set out every provision which might be influenced by enactment].)

C. *The Textual Presentation*

Appellants contend the textual presentation of Proposition 132 in the ballot pamphlet was flawed in two respects. First, appellants' two-paragraph prefatory "findings and declaration" section should not have been included as part of the text of the measure. However, appellants cite no authority to support the contention that it is improper for an initiative to contain an uncodified statement of intent, and many initiatives include preambles setting out uncodified statements of intent. (See, e.g., *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 342 [276 Cal.Rptr. 326, 801 P.2d 1077] [reciting uncodified preamble accompanying Proposition 115].) Second, the "findings and declaration" section in the ballot pamphlet differed from the "findings and declaration" section as it appeared on the initiative petitions. The only difference, however, was that the ballot pamphlet's prefatory section had eight words which were underlined, while the initiative petition had no underlining. This alteration is de minimis and does not warrant invalidation of Proposition 132. (See *Horwath* v. *City of East Palo Alto, supra*, 212 Cal.App.3d at pp. 778-779.)

---

[14]Before Proposition 132, these 52 sections of the Fish and Game Code regulated gill-netting along the entire California coast. Proposition 132 created a zone south of Point Arguello from which all gillnetting was excluded. Proposition 132 specified that in the area north of Point Arguello gillnetting would continue to be regulated by existing provisions of the Fish and Game Code. (§ 4, subd. (b).)

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.

A petition for a rehearing was denied November 20, 1995, and appellants' petition for review by the Supreme Court was denied January 24, 1996.